IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES J. BALLAS,

                  Plaintiff,

      v.

UNUM LIFE INSURANCE
COMPANY OF AMERICA,

                  Defendant.

OPINION AND ORDER

08-cv-563-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff James J. Ballas is suing defendant Unum Life Insurance under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, contending that defendant violated ERISA when it refused to pay him long term disability benefits under the disability insurance policy it issued to plaintiff's employer, Trek Bicycle Corporation. The case is before the court on the parties' cross motions for summary judgment.

I conclude that the case must be remanded to defendant for further proceedings because defendant failed to give plaintiff an adequate explanation of its reason for rejecting his claim for long term disability benefits. Defendant conducted an extensive review of plaintiff's claim and retained a functional capacity evaluator to undertake an evaluation of

1

plaintiff, but it did not explain why it chose to give greater weight to the opinions of four of its consulting physicians over the results of the evaluation.  Defendant had determined from plaintiff's employer that the material and substantial duties of his regular job included standing for the majority of the work day; the functional capacity evaluator determined that plaintiff was capable of standing one-third of a work day; and none of defendant's medical consultants explained why they believed that plaintiff could stand 100% of the day.

From the findings of fact proposed by the parties, I find that the following are undisputed and material.


UNDISPUTED FACTS

In 2005 and 2006, plaintiff James J. Ballas was employed in Wisconsin by Trek Bicycle Corporation.  Defendant Unum Life Insurance Company of America is a Maine corporation with its principal place of business in Portland, Maine.


A. Disability Insurance Policy

On January 1, 2003, defendant issued a Group Policy Long Term Disability Plan to Trek Bicycle Corporation for the benefit of its employees.  Plaintiff was entitled to coverage under this policy, which defines disability as follows:

You are disabled when [defendant] determines that:

2

- you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and

- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

After 24 months of payments, you are disabled when [defendant] determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

Under the policy, "limited" means "what you cannot or are unable to do." It defines "material and substantial duties" as duties that

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, [defendant] will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

The policy defines "regular occupation" as "the occupation you are routinely following when your disability begins. [Defendant] will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location."

The plan gives defendant discretionary authority to determine eligibility for benefits and interpret the terms and provisions of the policy.

3

B. Plaintiff's Occupation and Accident

Plaintiff's job at Trek Bicycle was bike frame finisher.  The job required him to stand all day, sanding down bicycle frames.  He did minimal lifting but "a lot of repetitive motion." Administrative Record (AR) 862.

On January 16, 2006, when plaintiff was 34, he was in a rollover car accident.  He sustained a cervical disc protrusion in his neck at C5-6 and suffered chronic pain in his neck and back.

C. Plaintiff's Applications for Benefits

On February 9, 2006, defendant notified plaintiff that he had been approved for short term disability benefits as of January 26, 2006, for a period of 13 weeks, running from January 16, 2006, the last day he had worked.  Plaintiff received these short term disability benefits through April 26, 2006.

In April 2006, plaintiff applied for long term benefits under the group disability policy.  On April 12, 2006, his physician, Dr. William Shannon, submitted a report to defendant, saying that plaintiff described "severe pain across the lower back that is made worse with activity including any bending, twisting or prolonged standing." AR 1086.  He noted that "a recent MRI scan did show evidence of a disc protrusion in the cervical spine, and broad disc bulging in the lumbar spine," and added that "It's difficult to determine with

4

any certainty if these are contributing to his ongoing pain symptoms." Id.   He restricted plaintiff to "sedentary type-work with no bending, twisting or pushing or pulling."  Id.

On May 9, 2006, Shannon completed a Supplemental Attending Physician Statement containing a primary diagnosis of severe neck and back pain and cervical disc protrusion. AR 421-22.  He noted that plaintiff's symptoms worsened with activity but that plaintiff was undergoing physical therapy and taking prescription medicine.  AR 422.

On June 1, 2006, Julie Jackson, RN, reviewed plaintiff's medical information on behalf of defendant and concluded that plaintiff's restrictions and limitations "appeared reasonable and supported until the 7/2006 date only."  AR 464.

On June 8, 2006, defendant denied plaintiff's claim for long term benefits after concluding that he was not a full-time employee.  On September 28, 2006, Senior Vocational Rehabilitation Consultant Shannon O'Kelley noted that defendant no longer believed that plaintiff did not meet the requirement for minimum hours worked.  On the same day, O'Kelley wrote that plaintiff's job duties were consistent with the occupation of Metal Finisher (705.684-034) in the Dictionary of Occupational Titles.  He found that "the overall physical requirement of this job is within the light range of capacity.  The restrictions and limitations of 'unable to work and unable to tolerate prolonged activity' would interfere with the performance of this and any occupation."  AR 861-62.

At some point, defendant approved payment of long term disability benefits to

5

plaintiff from April 26, 2006 through September 25, 2006, but it advised plaintiff that it was making the payment and any future payments under a reservation of rights.

Plaintiff discontinued physical therapy in August 2006. At the time, he was assessed as having achieved maximum benefits from physical therapy, but his therapist noted that he might benefit from another trial of physical therapy in the future "when psychosocial factors improve." AR 1119.

On September 12, 2006, Dr. Shannon submitted a supplemental statement to defendant, saying that plaintiff had a diagnosis of severe neck and back pain and a cervical disc protrusion and that Shannon was recommending a treatment regimen of medication and therapeutic exercise. AR 672. In Shannon's opinion, plaintiff could sit intermittently for two hours a day, stand intermittently for an hour a day and walk intermittently for one hour a day. He could never climb, twist, bend, stoop, reach above shoulder height or operate heavy machinery. His lifting capacity was occasionally (1-33% of the time) up to ten pounds. He was uncertain whether plaintiff's abilities would increase and whether he could ever return to work. In his opinion, plaintiff was disabled at least through 2006. AR 673.

On October 2, 2006, Dr. Shannon reported to defendant that plaintiff's neck and back pain had persisted and that

> Overall there has been no significant improvement in [plaintiff's] condition. It is my impression to a reasonable degree of medical certainty that [plaintiff] sustained strains and sprains of his cervicothoracic and lumbar spine in the motor vehicle

6

accident of 01/16/06.  He does have chronic ongoing pain that is permanent in
nature.  He does require ongoing medical treatment in the form of medications and
physician follow-up.  He has been unable to return to work due to the injuries he
sustained in the motor vehicle accident of 01/16/06.

AR 690.

On October 3, 2006, defendant determined that plaintiff met the minimum hours
worked to be eligible for benefits, AR 626, although it had not yet determined that his
medical condition kept him from working.  AR 630.

On October 4, 2006, plaintiff submitted a supplemental statement, asserting that he
remained unable to perform his own occupation because he could not perform repetitive
work with his hands and was permanently disabled from his accident.  AR 670.  He added
that he needed help with his daily household chores and had to be driven to his medical
appointments at times because of the effect of his medication and overall condition.  Id.

On December 12, 2006, Dr. Shannon completed a Medical Examination & Capacity
Form, in which he reported plaintiff's condition as chronic and not likely to improve.  He
found that plaintiff needed to change positions every 15 minutes, that he could stand for 30
-60 minutes in an eight-hour day and could not use his hands for repetitive activities.  AR
832-33.

On December 18, 2006, defendant reversed its position again on plaintiff's
qualification for benefits, determining that he did not meet the requirement for minimal

7

hours worked.   AR 816.   On February 8, 2007, plaintiff asked defendant for additional information about the minimum hours requirement, requesting specific answers to questions about the number of hours counted toward the 40-hour-per-week requirement and the amount of time that an employee may be absent from work for sickness or for vacation and personal time and still qualify under the plan.

On May 4, 2007, plaintiff appealed the December 18, 2006 termination of benefits and submitted a letter from his employer, explaining its employee hour accounting and stating that plaintiff was a "full-time, active employee through January 15, 2006." AR 853. Plaintiff adduced evidence that Trek had closed its plant from December 25-30, 2005 for the holidays and that Trek's policy was that "a person could [work] less than [40 hours a week] for quite some time and still keep their full-time status if they were using vacation/sick time or taking some time unpaid." AR 854.   Defendant took the position that even with the new information of the holiday closure, of which it had been unaware, plaintiff would still not meet the 80-hour bi-weekly threshold for eligibility for benefits.  AR 858.

Also on May 4, plaintiff submitted evidence that his long term disability premium payments were current through May 8, 2006 and that he had been away from work on September 23, 2005, when he was taken to the emergency room for a diabetic seizure, and again on September 26, 2005, October 3 and October 6, 2005.  He produced doctor's notes for all four absences.  AR 855-57.

8

In 2007, plaintiff saw Dr. Shannon only twice, once on February 13 and once on May 8. AR 1172-73. In his May 8 treatment notes, Shannon said that plaintiff appeared to be in no acute distress, that he walked with a stable gait and that he was "able to heel and toe walk without difficulty." AR 1082-92.

Dr. Pedro Pons, doctor of podiatric medicine and a member of the American Board of Disability Analysts, reviewed plaintiff's records on defendant's behalf and issued a report on July 19, 2007, in which he found that

> [t]he [restrictions and limitations] involving the claimant's back and neck conditions appear overly restrictive. More reasonable restrictions and limitations would be: claimant able to sit 8 hour [sic] while exercising frequent position change, short hourly walks for 5 minutes to self manage pain and positional stress, no overhead lifting, no above the shoulder lifting, push pull and lift carry limited to 15 lbs. occasionally. No bending or twisting at waist level.

AR 1280. Pons did not say anything about plaintiff's ability to stand, use his hands repetitively or perform other occupational duties. Id.

On July 27, 2007, Charles Sternbergh, a board certified neurosurgeon, reviewed plaintiff's medical records. He noted that plaintiff's "MR cervical spine identified a small focal disk protrusion at C5-6 without neural impingement . . . . MR lumbar spine identified minimal broad-based bulge at L4-5 . . . ." "Imaging of the entire spinal axis has shown no significant abnormality. The claimant's neurological examination has been normal." AR 1326-27. In Sternbergh's opinion, Shannon's finding of an impairment had been based

9

almost exclusively on plaintiff's self-reported pain and his limitations and restrictions were overly restrictive.   AR 1327.   From a neurological perspective, he found inadequate information on which to decide what restrictions and limitations should be applied to plaintiff.  He recommended a functional capacity evaluation.

Defendant engaged Mary Hughes of ErgoScience to conduct the recommended evaluation.  She tested plaintiff on August 30, 2007 and observed that his self-limiting behavior rendered the test results for some of the tasks inconclusive. AR 1474.  Plaintiff was tested on 15 tasks, which included climbing stairs, repetitive squatting, standing tolerance, stooping and sitting tolerance.   He self-limited on 73% of the tasks, whereas in her experience, motivated participants self-limited on no more than 20% of the tasks.  She noted that plaintiff walked slowly while being tested but moved more quickly when going to and from the restroom or leaving the facility.  Id.  However, on the test for standing tolerance, she noted no self-limiting, but rated the results "appropriate."  AR 1481.  According to her report, this meant that "[c]lient and therapist agree on stopping task.  Full physical effort given." AR 1480.  On the standing tolerance test, Hughes reported that plaintiff completed the full 5 minutes, or 100% of the task, made five position adjustments, had a pain score of 8 out of 10 (low back and between shoulder blades) and that his functional capacity was within normal limits.  AR 1481.  She concluded that at a minimum, plaintiff could perform light work, exerting up to 20 pounds of force occasionally, or up to 10 pounds of force

10

frequently or a negligible amount of force constantly (2/3 or more of the workday) to move objects, and that he had a maximum capacity for standing "occasionally" in the course of a regular 8-hour workday, that is, up to 1/3 of the day.  AR 1473.

On August 7, 2007, Trek provided defendant a job description for plaintiff, stating that his job required him to frequently lift three pounds, stand constantly, use his hands constantly for simple grasping, fine manipulation and repetitive motion to sand and finish the same product day after day.  AR 1363-65.

On August 8, 2007, O'Kelley said on behalf of defendant that plaintiff's upper extremity restrictions would interfere with the performance of his occupation.  AR 1366. However, two minutes after recording this statement, he wrote that it had been added to plaintiff's file in error.  AR 1267.  On August 9, O'Kelley reported his conclusion that the occupation identified for plaintiff in September 2006 was no longer the appropriate one. Instead, he identified the duties as "prepare, sand and finish carbon-fiber parts" and said that they could be performed within the light range of functioning.  He found that the job could be performed within the restrictions and limitations applicable to plaintiff, even with his diabetes, because it did not require him to work around machinery or at unprotected heights. AR 1369-70.  (Plaintiff does not contend that his diabetes plays any role in his disability claim.)

On September 25, 2007, Dr. Sternbergh prepared a neurosurgical addendum in which

11

he said that he had received a copy of the functional capacity evaluation report and had concluded that "the available medical information does not support a requirement to limit [plaintiff's] standing or walking activities" and that [plaintiff's] pain complaints and pain behavior are in excess of identifiable anatomic or physiological abnormalities." AR 1519. Sternbergh found the evaluation complete and thorough and its conclusion that plaintiff was able to work at a light level to be valid.  Id.

        On October 24, 2007, defendant notified plaintiff of its conclusion that he was not disabled by his medical condition.  Defendant affirmed its earlier decision to discontinue long-term benefits to plaintiff on the ground that the functional capacity evaluation and the reviews by its consulting physicians showed that plaintiff was capable of full-time work in his own occupation.  AR 1590-92.  On April 24, 2007, plaintiff objected to the determination and sought additional review.  AR 1637-39.

        On June 21, 2008, Reviewing Appeals Physician Thomas E. Moses, MD, reported to defendant that "[f]rom an orthopedic standpoint, the medical data supports the restrictions and limitations given by the [functional capacity evaluation]."  AR 1702.  On June 28, 2008, Beth Schnars, MD, a medical consultant certified in internal medicine employed by defendant, reported in part that plaintiff "could return to work with restrictions including exerting up to #20 [sic] pounds of force occasionally and up to #10 [sic] pounds of force frequently, and/or negligible amount of force frequently to lift, carry, push, pull, or otherwise

12

move objects, including the human body . . . .  Avoid prolonged bending, stooping, or reaching below the waist . . .  Avoid prolonged static positioning without the ability to shift position as necessary to maintain comfort."  AR 1707.  In Schnars's opinion, plaintiff's "[r]eported severity of pain is out of proportion to any underlying pathology which was noted to be very minimal on imaging studies . . . Described or reported limitations are inconsistent with any underlying organic musculoskeletal pathology."  AR 1708.  She added that although plaintiff continued to report severe pain, he was observed "to move in a fluid movement without pain behaviors on and off the exam table."  AR 1705-12.

Dr. Schnars noted the inconsistencies in plaintiff's pain reporting that his treating psychologist, Erik D. Beaver, Ph.D., had observed.  In a report received by defendant on July 9, 2007, Beaver reported "inconsistencies with reported level of activity between verbal and written questionnaire [concerning his pain behavior].  It was also observed, he was in no obvious discomfort and did not need to shift position or stand due to pain during the interview."  AR 1710.  Beaver noted "the possibility of invalid responses due to a response bias.  An additional factor calling into question the validity is the contradiction between his verbal responses during the interview and his responses to similar items on the questionnaire."  AR 1249-50.  Beaver found that plaintiff's "motivation to return to work was unclear."  AR 1250.  He prescribed ten visits for treatment but plaintiff never returned.

Defendant asked its vocational rehabilitation specialist, O'Kelley, for a review.

13

O'Kelley asked for additional clarification from Dr. Moses of plaintiff's postural limitations. On August 4, 2008, defendant's Lead Appeals Specialist, Kelly J. Fontana, asked Moses whether he would agree with Dr. Sternbergh's opinion that plaintiff would have light capacity but no postural limitations associated with standing or walking. AR 1753. Moses responded that he would agree with that opinion. AR 1755. O'Kelley concluded that plaintiff was capable of performing his occupational duties as described by his employer with the restrictions and limitations agreed upon by defendant's consulting physicians. AR 1760.

On August 22, 2008, defendant affirmed its denial of benefits to plaintiff. AR 1763-68.

OPINION

The policy at issue gives defendant discretionary authority to determine the validity of an employee's benefits claim. That means that defendant's denial of benefits applies unless the court determines that defendant applied the plan in an arbitrary and capricious manner. Firestone Tire & Rubber v. Bruch, 489 U.S. 101, 115 (1989). The administrator's decision stands so long as "'(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass important aspects of the problem.'" Militello v.

14

Central States, Southeast & Southwest Areas Pension Fund, 360 F.3d 681, 686 (7th Cir. 2004) (quoting Hess v. Hartford Life & Accident Insurance Co., 274 F.3d 456, 461-62 (7th Cir. 2001)).  In other words, an administrator's decision will be overturned only if it is downright unreasonable.  Carr v. Gates Health Care Plan, 195 F.3d 292, 294 (7th Cir. 1999).

In arguing that defendant's denial of benefits is arbitrary and capricious, plaintiff raises a number of challenges, starting with his contention that the denial is not supported by the medical evidence.  He adds that defendant did not weigh or refute the evidence that plaintiff could not stand frequently or constantly; defendant prevented a full and fair review by failing to provide plaintiff notice of the additional information necessary to perfect his claim under 29 U.S.C. § 1133; defendant's use of an occupation standard not required by the plan's provisions was arbitrary and capricious; defendant failed to acknowledge that self-limiting behavior results from pain or fear of re-injury; defendant's conflict of interest supports a finding that its decision was arbitrary and capricious; and its 22-month delay in deciding plaintiff's appeal is evidence of arbitrary and capricious conduct alone and in combination with other factors.

## A. Weighing of Medical Evidence

In denying plaintiff's claim after appeal, defendant relied on the opinions of its

15

consulting physicians (Sternbergh, Schnars, Moses and Pons).  In doing so, it did not acknowledge the contradiction between those reports and the functional capacity evaluation that Sternbergh had requested.  That report showed that, at maximum, plaintiff could stand only occasionally, defined as one-third of a day, whereas Sternbergh wrote that "the available medical information does not support a requirement to limit plaintiff's standing or walking activities."  Sternbergh may have had reasons for reaching his decision but he did not explain them.  In a report issued nine months later, Dr. Moses adopted "the restrictions and limitations given by the [evaluation]," but wrote two months afterwards that he agreed with Sternbergh's opinion that plaintiff would have no postural limitations associated with standing and walking.  Like Sternbergh, Moses gave no explanation for his new opinion that plaintiff was not limited to standing for only one-third of the day.

Dr. Schnars did not comment explicitly on plaintiff's capacity for standing, saying only that his reported limitations were inconsistent with any underlying organic musculoskeletal pathology.  Given the undisputed evidence that plaintiff's job required constant standing, one would have expected the doctors to explain why they did not agree with the results of the functional capacity evaluation on this point.  One reason may be that they did not know that the constant standing was a prerequisite for the job.  The record does not show that any of the consultants were furnished with this information.

Defendant cites Dr. Pons's July 19, 2007 report in support of its decision, but Pons

16

said only that plaintiff could sit for eight hours a day and never mentioned anything about standing.  Defendant infers from this omission that Pons saw no limitation on standing, but the inference is hardly inevitable.  It is just as reasonable to infer, as plaintiff does, that Pons did not believe that plaintiff could stand at all.  One could also infer that Pons had no realization of the importance of plaintiff's tolerance for standing to his ability to perform his job and, for that reason, confined his comments to those functional capacities he believed were at issue.

"ERISA requires employee benefit plans that deny disability benefits to 'set[ ]forth the specific reasons for such denial, written in a manner calculated to be understood by the participant.'" <u>Love v. National City Corporation Welfare Benefits Plan</u>, ___ F.3d ___, 2009 WL 2178667 *3 (7th Cir. July 23, 2009) (quoting 29 U.S.C. § 1133).  In <u>Love</u>, the court of appeals remanded the case to the plan administrator because it had not explained why it had ignored the evaluations and conclusions of every physician that had examined Love personally, all of whom had found that she was unable to work more than a few hours a day and could not stand, sit or walk for more than an hour at a time.

As the reports of Schnars and Sternbergh make clear, defendant had good reason not to place weight on the reports of plaintiff's treating physician.  What is much less clear is why the reviewer chose to believe four doctors who had never seen plaintiff and disbelieve the independent functional capacity evaluator it had retained and who had observed plaintiff

17

closely as she tested him.  It is no more clear why Dr. Sternbergh would ask for a functional capacity evaluation and then conclude from it that plaintiff could tolerate standing all day, when the evaluator had reached a different opinion.

This is a much simpler case than Love.  It involves only one alleged impairment and only one treating physician, but both cases are plagued by the same problem. In neither one did the plan provide specific and understandable reasons for its denial of benefits.

It is true that it is plaintiff's burden to produce evidence of his eligibility for disability benefits, but the fact that defendant and not plaintiff was responsible for producing the functional capacity evaluation does not relieve defendant of the need to consider the results of that evaluation and to explain to plaintiff why it chose not to give any weight to the results.

I conclude therefore that defendant must reconsider plaintiff's claim for long term benefits in light of the apparent discrepancy between the evaluation results and the opinions of its consulting physicians.  If defendant decides that plaintiff is eligible for 24 months of long term benefits because he was unable to perform the duties of his job as bicycle finisher during that time, it is still free to consider the separate question whether he is entitled to benefits because he is unable to perform the duties of any job for which he is suited.

No doubt plaintiff would prefer a decision awarding him benefits retroactively to October 2006.  Such a decision is appropriate only when the evidence is "so clear cut that

18

it would be unreasonable for the plan administrator to deny the application for benefits on any ground." Gallo v. Amoco Corp., 102 F.3d 918, 923 (7th Cir. 1996). That is not the situation in this case.

### B. Defendant's Failure to Provide Notice of Additional Information Needed

This claim is essentially a variant of the one I have just discussed. Plaintiff is arguing that defendant's explanation of its denial of benefits was inadequate in itself and also insufficient to give him fair notice of what evidence he needed to produce to challenge it. He alleges a second reason why he was deprived of adequate notice: defendant failed to explain why it had concluded that the "original occupation reviewed in reference to [plaintiff's] was no longer appropriate." As plaintiff points out, defendant did not say what it thought was inappropriate about the original occupation and why it believed the new version to be valid. Instead, it said it had obtained a job description from plaintiff's employer, as well as a clarification of plaintiff's duties, working environment, tools and equipment he used in the job, AR 1591; and that its vocational specialist had reviewed the description and noted that the overall physical requirement was within the light range, the job involved lifting up to 3 pounds frequently and standing for most of the day and that the material duties of the job could be performed within the light range of functioning. Id.

Although defendant did not say why it found the old description inadequate and the

19

new one more appropriate, it supplied information sufficient to allow a challenge. Plaintiff knew his job duties as well as anyone. If he believed that defendant had misunderstood them, had not considered all of them or was underestimating the difficulty of the work, he could have gathered information to show such errors. I am not persuaded that plaintiff has any viable objection to the adequacy of the notice that defendant provided.

Plaintiff takes issue with defendant's decision to base its denial of benefits on plaintiff's ability to perform his work tasks for his specific employer. It is odd that defendant did not explain why, in light of the provision in its policy that it looks at a claimant's occupation only as it is performed in the national economy, it confined its review to plaintiff's specific job. Defendant compounds the oddity by saying in its final letter to plaintiff's counsel on August 22, 2008:

> after a subsequent medical review outlined updated restrictions and limitations, a July 31, 2007 [occupational assessment] concluded additional information from your client's employer was needed to clarify the material and substantial duties of his occupation. Your client's occupation was properly identified and updated, determining the occupation could be performed with the restrictions and limitations presented. As a reminder, the [long term disability] policy requires assessment of your client's occupation as it is normally performed in the national economy, rather than how the work tasks are performed for a specific employer or at a specific location.

AR 1767.

Nevertheless, in the absence of any showing of prejudice by plaintiff, I cannot say that it was arbitrary or capricious for defendant to look more closely at plaintiff's job, which

involved finishing carbon fiber bicycle parts rather than metal bicycles, as in the original occupation.  Plaintiff has not suggested that his job required more strength or endurance than the job of finishing metal bicycles or that it should not be classified as light work.

## C. Defendant's Choice of Occupation Standard

Plaintiff contends not only that defendant failed to explain why plaintiff could perform the tasks of his specific job, as discussed above, but that it acted arbitrarily and capriciously in selecting an occupation standard not required by the plan's provisions.  As I have explained, I am not persuaded that plaintiff has any claim based on defendant's modification of the occupation description when he has not shown that the choice prejudiced him in any way.

## D. Self-Limiting Behavior

Plaintiff challenges defendant's failure to acknowledge that self-limiting behavior results from pain or fear of re-injury, but this challenge is irrelevant.  The evaluator did not say that plaintiff displayed any self-limiting behavior when she was testing him for standing tolerance.  To the extent that defendant's consultants considered the self-limiting behavior in reaching their conclusion that plaintiff is not limited in standing, they will have an opportunity to say whether they acknowledged the possible reasons for the self-limiting

21

behavior plaintiff displayed when he was being tested on tasks other than standing.

### E. Defendant's Alleged Conflict of Interest

In Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008), the Supreme Court held that when the entity that administers an ERISA plan both determines whether an employee is eligible for benefits and pays benefits out of its own pocket, that dual role creates a conflict of interest that reviewing courts "should consider as a factor in determining whether the administrator has abused its discretion in denying benefits." Id. at 2346. However, "the significance of the factor will depend upon the circumstances of the entire case." Id. (citing Firestone Tire & Rubber, 489 U.S. at 115. At this junction, in this case, it has no significance. The case is being remanded for additional review of plaintiff's claim for long term benefits, which will result in either the award of benefits or a more detailed, persuasive and understandable explanation of defendant's denial of the claim.

### F. Defendant's Delay in Deciding Claim

Plaintiff argues that defendant's 22-month delay in deciding his appeal is evidence of arbitrary and capricious conduct alone and in combination with other factors. Neither the alleged conflict of interest or the alleged delay requires an award of benefits to plaintiff, whether the two matters are considered alone or in combination with the other challenges

22

plaintiff is asserting.  In fact, a review of the record shows that a good part of the delay is attributable to plaintiff and his failure to submit materials promptly.  For example, plaintiff did not appeal until May 4, 2007, defendant's December 18 decision to deny him benefits because he did not meet the minimum work requirements in the policy and he did not appeal the October 24, 2007 decision until April 24, 2008.

## G. Summary

In summary, plaintiff is entitled to a remand of this case so that defendant can undertake a prompt reconsideration of its denial of long term benefits.  If it decides that it cannot defend that denial, it is still free to consider whether plaintiff is disabled from performing the duties of any gainful occupation for which he is reasonably fitted by education, training or experience.

## ORDER

IT IS ORDERED that plaintiff James J. Ballas's motion for summary judgment is GRANTED and his claim for long term disability benefits is REMANDED to defendant Unum Life Insurance Company of North American for further proceedings consistent with

this opinion.  The clerk of court is directed to close the case.

Entered this 5th day of August, 2009.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

24